**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHELE DALY,**

                    **Plaintiff,**


          **v.**                                                                      **6:18-CV-845**

**THE TOWN OF DEWITT, TOWN OF**
**DEWITT POLICE CHIEF JAMES C.**
**HILDMAN, Individually and in his official**
**capacity, OFFICER PETER HOOSER,**
**Individually and in his official capacity,**
**and JOHN DOE, individually and his in**
**his official capacity, NEW YORK STATE**
**POLICE, NEW YORK STATE POLICE**
**TROOP "D" COMMANDING OFFICER**
**MAJOR PHILIP T. RAUGEUX, Individually**
**and in his official capacity, FORMER NEW**
**YORK STATE TROOP "D" ACTING COMMANDER**
**MARK L. LINCOLN, Individually and in his official**
**capacity, TROOPER SHANE M. WOODS,**
**Individually and in his official capacity,**
**TROOPER ANDREW CAMPBELL, Individually and**
**in his official capacity, and JOHN DOE, Individually**
**and in his official capacity,**

                    **Defendants.**


_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**



                              **DECISION & ORDER**

**I.      INTRODUCTION**

          Plaintiff, a school bus driver, alleges that Town of DeWitt police officers and New

1

York State Police falsely arrested and imprisoned her based on the incorrect belief that she was under the influence of drugs or alcohol while operating a school bus with children aboard.  She asserts a claim under 42 U.S.C. §1983 ("Section 1983") for a violation of her Fourth and Fourteenth Amendment rights based on the theories of false arrest and false imprisonment (First Count); a claim under Section 1983 for supervisory liability (Second Count); a claim under Section 1983 against the Town of DeWitt for municipal liability (Third Count); a claim under Section 1983 against the New York State Police for municipal liability (Third Count[1]); a claim alleging the New York state tort of negligent hiring, training, supervision and retention against the Town of DeWitt, the Town of DeWitt Police, and the New York State Police (Fourth Count); and a claim alleging the New York state tort of abuse of process (Fifth Count).

Defendants the New York State Police, Major Rougeux,[2] Commander Lincoln, Trooper Woods, and Trooper Campbell (collectively, "State defendants") move to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  Dkt. No. 10.  Plaintiff opposes the motion. Dkt. No. 16.

## II.    BACKGROUND

The following facts have been taken from Plaintiff's complaint and are accepted as true for purposes of this motion.  On April 29, 2017, Plaintiff Michele L. Daly, a bus driver employed by the Whitesboro (New York) School District, picked up a school lacrosse team to transport them to Fulton, New York.  Compl. ¶¶ 20, 21.  During the trip, children on the

---

[1]The complaint contains 2 counts enumerated as "Third Count".

[2]The State defendants indicate that Major Rougeux's name is misspelled in the complaint.

bus apparently placed 911 calls complaining of reckless driving. *Id.*, ¶ 41.

Defendant Officer Peter Hooser, a police officer employed by the Town of DeWitt, pulled the bus over.  *Id.*, ¶¶ 10, 22.   Officer Hooser removed Plaintiff from the bus and questioned her regarding her consumption of alcohol and illegal drugs. *Id.*, ¶ 23.  Plaintiff informed Officer Hooser that she had not consumed alcohol or drugs. *Id.*, ¶23.  Officer Hooser  "insisted she was under the influence," saying "[i]f you think I am going to let you go and say have a nice f***ing day, lady, that ain't going to happen." *Id.*, ¶¶ 23, 24.

Additional officers arrived, and Plaintiff was placed by an unnamed officer into the back of a police car. *Id.*, ¶ 25.  Plaintiff informed the officers that she had a traumatic brain injury ("TBI"). *Id.*, ¶ 26.  An unnamed officer stated to Plaintiff: "You absolutely do not have a TBI and you are going to do" field sobriety tests. *Id.*, ¶ 27. Unnamed officers granted Plaintiff's request to change her shoes before performing field sobriety tests, which Plaintiff "was unable to do." *Id.*, ¶ 27.  "[U]nable to perform the tests," Plaintiff was arrested and taken to the New York State Police barracks. *Id.*, ¶ 28.

Officer Hooser stated in a "police deposition" that he "observed [the] bus . . . cross the hazardous marking several times swaying" and that he saw the bus nearly strike another vehicle. *Id.*, ¶ 39. The complaint asserts that Officer Hooser's statement is false and contradicted by video recordings from the bus's six cameras, which do not show the bus weaving. *Id.*, ¶¶ 39, 40.

Once at the barracks, "New York State drug influence[ ] evaluator" Defendant Trooper Andrew Campbell administered more alcohol and drug tests "for an hour," including a blood alcohol test that registered a blood alcohol content of zero percent. *Id.*, ¶ 29.  "The

3

Defendants instead of waiting for the results of the blood tests, and relying on Defendant, Trooper Andrew Campbell, New York State Police drug influence evaluator, went ahead and charged the Plaintiff with" three counts of Aggravated Driving While Intoxicated (N.Y. Vehicle and Traffic Law § 1192 [2-a][b]), fourteen counts of Endangering the Welfare of a Child (N.Y. Penal Law § 260.10), one count of Driving While Ability Impaired by Drugs in the First Degree (N.Y. Vehicle and Traffic Law § 1192 [4]), one count of Driving While Ability Impaired by Drugs—Child in the Vehicle Aged 15 Years or Less (N.Y. Vehicle and Traffic Law § 1192 [12]), and one count of Moving from the Lane Unsafely (N.Y. Vehicle and Traffic Law § 1128 [d]).  Compl. ¶ 46.  Later, Plaintiff — represented by counsel — was arraigned in Cicero Town Court on these charges and then released on her own recognizance.  *Id.*, ¶¶ 31, 32, 33.  Plaintiff "had been in custody by the Defendants for approximately twelve (12) hours. Plaintiff was handcuffed the entire time she was in custody and was not offered any food although she had asked for food and was only given a sip of water. Plaintiff was only allowed to go to the bathroom after she begged to use the bathroom." *Id.*, ¶ 31.

After the arraignment, Defendant Trooper John Doe drove Plaintiff to the Westmoreland exit of the New York State Thruway to meet her mother. *Id.*, ¶ 32.  She was handcuffed with her hands behind her for the entire trip and was not uncuffed until she was out of the State Police vehicle at the Westmoreland exit.  *Id.*  This occurred because Trooper John Doe refused Plaintiff's requests to remove the handcuffs. *Id.*

The State Police issued a press release and Plaintiff's arrest and arraignment attracted press coverage. *Id.*, ¶ 34.  Plaintiff was placed on administrative leave by

Whitesboro School District and suffered humiliation and trauma requiring counseling.  *Id.*, ¶ 35.

Blood tests administered by the State Police and private blood tests later obtained by Plaintiff were negative for illegal substances. *Id.*, ¶¶ 37, 38.  The State Police sent Plaintiff's blood sample to the FBI, which confirmed the negative result. *Id.*, ¶ 38.

The Onondaga County District Attorney's Office declined to prosecute Plaintiff and dismissed all charges, saying in a press release: "Based upon our investigation and review of this matter, we are required to dismiss all charges against Michele Daly. There is absolutely no evidence that she had drugs in her system . . . and there is insufficient evidence to support an ethical prosecution . . . ." *Id.*, ¶ 42. An unnamed representative or employee of the State Police "demanded the District Attorney's Office . . . continue the prosecution . . . even though they knew there were no charges to be sustained . . . ." *Id.*, ¶ 43.

## III.   STANDARDS OF REVIEW

### a. 12(b)(1)

A motion brought pursuant to Fed. R. Civ. P. 12(b)(1) challenges the subject matter jurisdiction of the Court to address a case or certain claims in the case.  A case is to be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States*, 201 F. 3d 110, 113 (2d Cir. 2000).

### b. 12(b)(6)

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency

of the claims alleged in the matter.  On such a motion, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted).  This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ... are not entitled to the assumption of truth." *Id.; see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at  570).   A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted)(quoting Fed. R. Civ. P. 8(a)(2)).   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at  678 (quoting *Twombly*, 550 U.S. at 557).

## IV.    DISCUSSION

### a.  Eleventh Amendment Sovereign Immunity

6

The State defendants argue that due to Eleventh Amendment immunity, the Court lacks subject matter jurisdiction over Plaintiff's claims brought pursuant to Section 1983 against the State Police and the individual State Defendants in their official capacities. Plaintiff does not specifically oppose this argument.  For the reasons that follow, this aspect of the State defendants' motion is granted.

The Eleventh Amendment to the United States Constitution immunizes the states, their agencies, and their officials acting in their official capacities from suits for damages except where a state has waived its immunity. *Morris v. N.Y. State Police*, 268 F. Supp. 3d 342, 359 (N.D.N.Y. 2017).   Given that Section 1983 did not abrogate States' sovereign immunity, federal courts lack subject matter jurisdiction to consider Section 1983 claims for damages against such defendants. *See id.*  As a corollary and as the Supreme Court made clear in *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989), "it does not follow that if municipalities are persons [under *Monell*] then so are States." *Id.* at 70. "States are protected by the Eleventh Amendment while municipalities are not ... and ... [the] holding in *Monell* [was limited] to local government units which are not considered part of the State for Eleventh Amendment purposes." *Id.* (citation and internal quotation marks omitted).

Here, all claims brought pursuant to Section 1983 against the State Police and the individual State defendants in their official capacities must be dismissed.  Specifically, the complaint's First Count (Section 1983 false arrest), insofar as it is asserted against the State Police and the individual State defendants in their official capacities, is dismissed. The Second Count (Section 1983 supervisory liability), insofar as it is asserted against the individual State defendants in their official capacities, is dismissed.  The second Third

Count (Section 1983 municipal liability), asserted against the State Police, is dismissed.

With respect to state law claims for damages, "New York has waived its immunity from liability and consented to be sued only to the extent that claims are brought in the New York Court of Claims." *Gross v. New York*, 428 F. App'x 52, 53 (2d Cir. 2011).  On the other hand, damage claims against State employees sued in their individual capacities are not barred by the Eleventh Amendment or the Court of Claims Act. *See Bobbit v. Marzan*, 2017 U.S. Dist. LEXIS 161478, *42-*43 (S.D.N.Y. Sep. 28, 2017); *Morell v. Balasubramanian*, 70 N.Y.2d 297, 302 (N.Y. 1987); *Cavanaugh v. Doherty*, 243 A.D.2d 92, 101 (N.Y. App. Div. 1998).

The Fourth Count (state tort of negligent hiring), asserted against the Town of DeWitt, the Town of DeWitt Police, and the State Police, is dismissed with respect to the State Police.  The dismissal is without prejudice to commencing an action in the New York Court of Claims.  The Fifth Count (state tort of abuse of process), asserted generally against "defendants," is dismissed insofar as it is against the State Police and the individual State Defendants acting in their official capacities. The dismissal is without prejudice to commencing an action in the New York Court of Claims.  Thus, the only claims against the State Defendants that survive the application of sovereign immunity are the First Count (Section 1983 false arrest), Second Count (Section 1983 supervisory liability), and Fifth Count (state tort of abuse of process), insofar as they are asserted against the individual State defendants in their individual capacities.

**b.  False Arrest**

The State defendants move to dismiss the False Arrest claims against the individual

State defendants acting in their individual capacities.  "To state a claim for false arrest or false imprisonment under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified." *Guadagni v. N.Y.C. Trans. Auth.*, 2009 WL 1910953, at * 4 (E.D.N.Y. June 30, 2009) (citing *Savino v. City of N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003)).  "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures . . . is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996))(citations omitted)); *see Guadagni*, 2009 WL 1910953, at * 4 ("Federal claims for false arrest and imprisonment brought via § 1983 rest on an individual's Fourth Amendment right to be 'free from unreasonable seizures, including arrest without probable cause,' and are 'substantially the same as a claim for false arrest under New York law.'" )(quoting *Weyant*, 101 F.3d at 852); *see also Ostroski v. Town of Southold*, 443 F. Supp.2d 325, 334 (E.D.N.Y. 2006)("In New York, the claim colloquially known as 'false arrest' is a variant of the tort of false imprisonment, and that tort is used to analyze an alleged Fourth Amendment violation in the § 1983 context.")(citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995), *cert. denied*, 517 U.S. 1189, 116 S. Ct. 1676, 134 L. Ed.2d 779 (1996)).  "To prove intent, the defendant must have either (a) confined or intended to confine the plaintiff or (b) affirmatively procured or instigated the plaintiffs' arrest." *King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir.1997).

"The existence of probable cause to arrest constitutes justification and is a complete

defense to an action for false arrest [.]" *Weyant*, 101 F.3d at 852 )(internal citation and quotation omitted); *see Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018)("[P]robable cause [is] an absolute defense to the action."). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. The officer may have probable cause even if he relies on information that turns out to be mistaken, so long as it was reasonable to rely on that information at the time." *Acquah v. City of Syracuse*, No. 5:18-CV-1378 (LEK/DEP), 2019 WL 3975463, at *3 (N.D.N.Y. Aug. 22, 2019)(internal quotation marks and citations omitted). "[O]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Curley v. Vill. of Suffern*, 268 F.3d 65,70 (2d Cir. 2001). The fact that a plaintiff may ultimately be proven innocent is irrelevant to the question whether probable cause existed at the time of arrest. *See Ryburn v. Huff*, 565 U.S. 469, 477 (2012).

   The false arrest claim against Woods must be dismissed. Contrary to Plaintiff's contention in her memorandum of law, *see* Pl. Mem. L. at 1 ("Trooper Woods and Trooper Campbell responded [to the scene]."), the complaint does not allege that Woods was one of the officers who arrived at the scene after Plaintiff was pulled over, nor does it allege that Woods took any action to caused Plaintiff's detention or instigate the charges against her. Without such allegations, there is no plausible basis to hold him liable for false arrest. Accordingly, the false arrest claim against Woods is dismissed with leave to amend. That much of Defendants' motion asserting that Woods had actual or arguable probable cause to

arrest Plaintiff is denied with leave to renew if Plaintiff amends her complaint.

The complaint also does not allege that Campbell was one of the officers who arrived at the scene, rather alleging that "[u]pon arriving at the State Police barracks the Plaintiff was subjected to further tests by Trooper Andrew Campbell . . . ."  Compl. ¶ 29.[3]  For reasons discussed below, the Court addresses the false arrest claim against Campbell as comprising two distinct periods of confinement - (1) the one-hour period during the tests, and (2) the period from when the tests ended to when Plaintiff was arraigned. *See Heck v. Humphrey*, 512 U.S. 477, 484(1994)("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.")(citation omitted); *Singer*, 63 F.3d at 117 ("Typically, a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest ..., while the tort of malicious prosecution will implicate post-arraignment deprivations of liberty.")(citations omitted).

Turning first to the one-hour testing period, under the facts alleged in the complaint it appears that Campbell was justified in detaining Plaintiff for these tests.[4]  The complaint alleges that the arresting officers were summoned by 911 calls of erratic driving, and Plaintiff then failed a field sobriety test.  An officer at the barracks asked to perform sobriety testing on an individual arrested under these circumstances would presume the arresting officers had probable cause to arrest the individual, *see Bobolakis v. DiPietrantonio*, 523 F.

---

[3] Although Plaintiff alleges in her memorandum of law that Campbell responded to the scene of the arrest, the Court analyzes the claim based on the allegations in the complaint for purposes of potential appellate review.

[4]The complaint does not allege that administration of drug influence tests themselves constitutes a deprivation of a constitutional right. Thus, the Court confines it discussion to whether Campbell unlawfully detained Plaintiff during the administration of the tests, and offers no opinion as to the legality of the tests.

11

App'x 85, 87 (2d Cir. 2013); *Otero v. Town of Southampton*, 59 F. App'x 409, 411 (2d Cir. 2003), and thus the officer would conclude he had a legal justification to detain the individual for testing. *See Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007)(police officers may rely upon information gained from other officers in making their probable cause assessment); *Savino v. City of N.Y.*, 331 F.3d 63, 74 (2d Cir. 2003)(same).  Accordingly, to the extent the complaint alleges that Campbell first encountered Plaintiff at the barracks and falsely imprisoned her while he conducted a battery of tests to determine her sobriety, the false arrest claim for this period of confinement is dismissed without prejudice to amendment.

Turning to the period of time from the end of the tests to the arraignment, the complaint is unclear as to what is being alleged.  Plaintiff alleges: "The Defendants instead of waiting for the results of the blood tests, and relying on Defendant, Trooper Andrew Campbell, New York State Police drug influence evaluator, went ahead and charged the Plaintiff with" the crimes for which she was arraigned that night.  Compl. ¶ 46. It is unclear whether Plaintiff is alleging that Campbell was one of the officers that "went ahead and charged Plaintiff."  It is also unclear why "the Defendants" relied on Campbell even though the results of the blood test had not yet been obtained.  Absent clear allegations that Campbell played any active role in the decision to lodge charges against Plaintiff and thereby continue her conferment until arraignment, there is no plausible basis to conclude that he intentionally detained her during this period.  Accordingly, any false imprisonment claim against Campbell premised on the post-testing confinement is dismissed without prejudice to amendment.  Like with Woods, that much of the State defendants' motion asserting that Campbell had actual or arguable probable cause to detain Plaintiff is denied

12

with leave to renew if Plaintiff amends her complaint.

The complaint is also unclear whether Plaintiff alleges a false arrest claim against a John Doe defendant. There is no allegation that a John Doe defendant appeared at the scene of the arrest.  While Plaintiff alleges that a John Doe defendant required Plaintiff to wear handcuffs while he transported her to an exit on the New York State Thruway to meet her mother, this post-arraignment conduct does not fall within the scope of a false arrest claim. *See Heck*, 512 U.S. at 484; *Singer*, 63 F.3d at 117.  Because there are no plausible allegations sufficient to support a false arrest claim against a John Doe defendant, any such claim is dismissed without prejudice to amendment.  Like with Woods and Campbell, any argument by the State defendants that a John Doe defendant had actual or arguable probable cause to detain Plaintiff is denied with leave to renew if Plaintiff amends her complaint.

Although not mentioned in the caption, the complaint names "New York State Police Trooper Roy E. Benson" as a defendant, Compl. ¶ 14, and references him in the allegation that the State Police are liable for his actions under a theory of *respondeat superior* liability. *Id.*, at ¶ 18.  There are no plausible allegations supporting a false arrest claim against Benson, and thus any such claim is dismissed without prejudice to amendment.  If Benson is added to the false arrest claim by amendment, the State defendants are granted to leave to argue that he had actual or arguable probable cause to detain Plaintiff.

Absent viable allegations that an individual State defendant falsely arrested Plaintiff,

there is no basis to apply supervisory liability to Rougeux, Lincoln, or a John Doe defendant[5] to hold them liable for a false arrest by their supervisees. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985)(To establish personal liability against a government official for a constitutional violation, a plaintiff must show that "the official, acting under color of state law, caused the deprivation of a federal right."); *Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir. 1998)("[S]upervisors may be 'personally involved' in the constitutional torts of their supervisees if: (1) the supervisory official, after learning of the violation, failed to remedy the wrong; (2) the supervisory official created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (3) the supervisory official was grossly negligent in managing subordinates who caused the unlawful condition or event." ); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)("Personal involvement" of a supervisory official may be established by evidence of: (1) direct participation in the alleged constitutional violation; (2) failure to remedy a wrong after learning of it; (3) creation or maintenance of a policy under which unconstitutional violations occurred; (4) gross negligence in managing subordinates who committed the unconstitutional acts; or (5) deliberate indifference by failing to act on information indicating that constitutional violations were occurring.).  Accordingly, the supervisory liability claims against Rougeux, Lincoln, and John Doe for the alleged false arrests are dismissed without prejudice to amendment.

   **c.  Abuse of Process**

---

[5]The complaint alleges: "DEFENDANT, CHIEF JAMES C. HILDMAN, and DEFENDANT,  MAJOR PHILIP T. RAUGEUX, DEFENDANT ACTING COMMANDER MARK L. LINCOLN, and DEFENDANT, JOHN DOE, were on the day of April 29, 2017, and at all other relevant times to the [Complaint], supervisors of Defendants Officer Peter Hooser, Trooper Shane M. Woods, Trooper Andrew Campbell and John Doe." Compl. ¶ 52.  Although ambiguous, the Court presumes that Plaintiff alleges that a John Doe defendant was at relevant times a supervisor of Woods, Campbell, and/or a John Doe defendant.

14

The State defendants also seek to dismiss Plaintiff's claims against them for abuse of process. "In the criminal context, malicious abuse of process is by definition a denial of procedural due process. . . . Procedural due process forbids the use of legal process for a wrongful purpose." *Abreu v. Romero*, 2010 WL 4615879, at *8 (S.D.N.Y. Nov. 9, 2010)(citation omitted). To state a claim for malicious abuse of process, Plaintiff must prove the defendant: 1) employed regularly issued legal process to compel performance or forbearance of some act; 2) with intent to do harm without excuse or justification; 3) to obtain a collateral objective outside the legitimate ends of the process. *Devarnne v. City of Schenectady*, 2011 WL 219722, at *3 (N.D.N.Y. Jan. 21, 2011) (citing *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)).

> In New York, "[a] malicious motive alone ... does not give rise to a cause of
> action for abuse of process." *Savino*, 331 F.3d at 77 (alteration in
> original)(quoting *Curiano v. Suozzi*, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466,
> 469 N.E.2d 1324 (1984)). "In order to state a claim for abuse of process, a
> plaintiff must establish that the defendants had an improper *purpose* in
> instigating the action." *Id.* A plaintiff alleging abuse of process must claim that
> the defendants "aimed to achieve a collateral purpose beyond or in addition to
> his criminal prosecution." *Id.*

*Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016)

"[T]he proper use of legal process based on an improper or malicious motive such as a desire for retaliation is insufficient to satisfy the 'collateral objective' requirement." *Pinter v. City of New York*, 976 F. Supp.2d 539, 568 (S.D.N.Y. 2013). "In New York . . . wrongful [collateral] purposes have included economic harm, extortion, blackmail, and retribution." *Ketchuck v. Boyer*, 2011 WL 5080404 at *7 (N.D.N.Y. Oct. 25, 2011); *see Hovos v. City of New York*, 999 F. Supp.2d 375, 391 (E.D.N.Y. 2013)("A malicious abuse of process claim thus requires an ulterior purpose such as the infliction of economic harm, extortion,

blackmail, or retribution.").

"[T]he gist of abuse of process is the improper use of process after it is regularly issued." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Accordingly, to succeed on an abuse of process claim, a plaintiff must not only show a collateral objective, but must show that that objective was pursued after legal process was issued. *Richardson v. N.Y.C. Health & Hosps. Corp.*, No. 05–CV–6278 (RJS), 2009 WL 804096, at *16–17 (S.D.N.Y. Mar. 25, 2009).

"While a lack of probable cause is not explicitly an element of an abuse of process claim, the presence of [arguable] probable cause negates a claim for abuse of process, particularly the second element." *Sforza v. City of N.Y.*, 2009 U.S. Dist. LEXIS 27358, at *49-50 (S.D.N.Y. Mar. 31, 2009) (internal quotation marks omitted); *see Basinski v. City of N.Y.*, 192 F. Supp. 3d 360, 367 n.6 (S.D.N.Y. 2016) ("a finding of arguable probable cause for an arrest vitiates a claim for abuse of process based on that arrest"). "Conversely, the lack of probable cause gives rise to an inference of malice, supporting a finding of 'intent to harm.'" *Sforza*, 2009 U.S. Dist. LEXIS 27358, at *50.

Plaintiff's abuse-of-process claims against the State defendants fail on multiple grounds. First, the complaint does not identify which, if any, State defendants issued the allegedly abusive process. *See* Compl. ¶ 73 ("The Defendants and/or John Doe Defendants issued legal process to place Plaintiff under arrest."); *see also Dubois v. City of White Plains*, No. 16-CV-07771 (NSR), 2018 WL 6025868, at *5 (S.D.N.Y. Nov. 16, 2018) ("Examples of regularly issued legal process include the effectuation of an arrest or the initiation of an arraignment on criminal charges.")(citing *Cook*, 41 F.3d at 80; *Pinter v. City*

16

*of New York*, 976 F. Supp. 2d 539, 570 (S.D.N.Y. 2013)).

Second, even assuming a State defendant did effectuate Plaintiff's arrest and/or

initiated an arraignment on criminal charges, the complaint fails to plausibly assert

actionable wrongful intent.  The complaint alleges:

> 77. Probable cause for Plaintiff's arrest was lacking, and thus malice or any improper or wrongful motive may be inferred from the lack of probable cause. Defendants might have been acting in the honest and reasonable belief that Plaintiff was guilty of some crime, but their good faith does not exonerate them as the facts themselves and as presented to them did not constitute any criminal conduct.

> 78. That the Defendants acts intended to cause harm to the Plaintiff and did cause harm to the Plaintiff without excuse or justification.

Compl. ¶¶ 77-78.  These allegations sound as if Plaintiff is contending that the arresting

officers had a good faith belief at the time of arrest that Plaintiff had committed "some

crime," but that based on inquiry after the arrest it was found that no crime had actually

been committed.  Such allegations support a finding that probable cause existed at the time

of arrest, defeating a claim that the arresting officers acted with a wrongful intent.  *See*

*Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006)(Because probable cause is evaluated

under an objective standard, it need not be "predicated upon the offense invoked by the

arresting officer, or even upon an offense 'closely related' to the offense invoked by the

arresting officer," and "the 'subjective reason for making the arrest need not be the criminal

offense as to which the known facts provide probable cause.'")(quoting *Devenpeck v.*

*Alford*, 543 U.S. 146, 153 (2004)); *see, e.g., Antoine v. LaRotonda*, No. 16-CV-6056 (CS),

2019 WL 3337900, at *6 (S.D.N.Y. July 25, 2019)("[I]f Defendant had probable cause to

arrest Plaintiff for any crime, the arrest was privileged and cannot form the basis of a false

17

arrest claim under 42 U.S.C. § 1983.").

Third, the complaint fails to plausibly allege that the State defendants arrested Plaintiff to obtain a wrongful collateral objective outside the legitimate ends of that process, such as to impose economic harm, extortion, blackmail, or retribution. Rather, the complaint alleges that "Defendants aimed to achieve a collateral purpose beyond criminal prosecution, such purpose being the furtherance of the unconstitutional policy and/or custom of making an immediate arrest regardless of whether reasonable or probable cause existed for the arrest." Compl. ¶ 76. Furthering an unconstitutional policy of making immediate arrests regardless of whether reasonable or probable cause existed does not, in and of itself, plausibly demonstrate that defendants aimed to achieve a collateral purpose beyond or in addition to Plaintiff's criminal prosecution. Further, the alleged wrongful collateral objective was not pursued after the legal process of arrest was issued, but rather was pursued simultaneously with the arrest.

For these reasons, the abuse-of-process claim must be dismissed. Because it is possible that Plaintiff could plead an actionable abuse-of-process claim, dismissal is without prejudice to amendment.

## V.    CONCLUSION

For the reasons discussed above, the State defendants' motion to dismiss, Dkt. No. 10, is **GRANTED**. In this regard:

- The First Count (Section 1983 false arrest) insofar as it is asserted against the New York State Police and the individual State defendants acting in their official capacities is **DISMISSED**, and insofar as it is asserted against the individual State defendants acting in

their individual capacities is **DISMISSED** without prejudice to amendment.

     - The Second Count (Section 1983 supervisory liability) insofar as it is asserted against the individual State defendants in their official capacities is **DISMISSED**, and insofar as it is asserted against Major Rougeux, Commander Lincoln, and John Doe in their individual capacities is **DISMISSED** without prejudice to amendment.

     - The second Third Count (Section 1983 municipal liability against the New York State Police) is **DISMISSED**.

     - The Fourth Count (state tort of negligent hiring) insofar as it is asserted against the New York State Police is **DISMISSED** without prejudice to commencing an action in the New York Court of Claims.

     - The Fifth Count (state tort of abuse of process) insofar as it is asserted against the New York State Police and the individual State defendants acting in their official capacities is **DISMISSED** without prejudice to commencing an action in the New York Court of Claims, and insofar as it is asserted against the individual State defendants acting in their individual capacities is **DISMISSED** without prejudice to amendment.

     If Plaintiff intends to amend the complaint, she must do so within thirty (30) days of the date of this Decision and Order.  Absent amendment, the claims dismissed without prejudice to amendment will be deemed dismissed with prejudice.

     The Clerk of the Court is respectfully directed to correct the docket to reflect that the last name of "Defendant Major Philip T. Raugeux" is spelled "Rougeux."

     The Clerk of the Court may terminate the New York State Police, Major Rougeux, Commander Lincoln, Trooper Woods, Trooper Campbell, and a John Doe defendant

(representing the State John Doe defendants as opposed to the Town of Dewitt John Doe defendants).

**IT IS SO ORDERED.**

Dated: September 2, 2019

Thomas J. McAvoy
Senior, U.S. District Judge